(9 Misc. Rep. 42.)

### SMITH v. MAXFIELD.

(Common Pleas of New York City and County, General Term.    June 4, 1894.)

LANDLORD AND TENANT—HOLDING OVER—EVIDENCE.

> In an action for rent, the fact that defendant left a few articles on the premises after the expiration of his lease does not show a holding over where the janitress of the building testified that, in similar cases, it was usual to allow an outgoing tenant to leave articles of furniture until called for, and that, in case another tenant moved in, such articles were removed to the apartments of the witness.

Appeal from third district court.

Action by Annie E. Smith against Charles E. Maxfield for rent, and for damages to the leased premises.    There was a judgment in favor of plaintiff, and defendant appeals.    Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

Abner C. Thomas, for appellant.

J. C. McEachen, for respondent.

BOOKSTAVER, J.    This action was brought to recover $82, of which $32 was claimed for rent for one month, and $50 as damages

for injuries to the leased premises.    The justice gave a judgment for
$43.17, but the record does not show how the amount was made
up.    At the close of the plaintiff's case a motion was made to dis-
miss the complaint, which was denied, and an exception taken.
By the terms of the lease between the parties, it expired on the
1st day of May, 1893.    In April of that year, and before the end
of that term, the plaintiff rented the property to one Fisher, who
paid $16 on account for the month of May, and he was therefore
entitled to the possession of the premises, and plaintiff accepted
him as tenant.    This being the case, plaintiff could not recover
from the defendant for the month of May.    He could not have
two tenants for the same property for the same time.    Gardner
v. Keteltas, 3 Hill, 330; Insurance Co. v. Scott, 2 Hilt. 550.    The
grounds upon which it was sought to hold the defendant for rent
for the month of May arose from the fact that a few articles be-
longing to defendant were left in the premises, the facts in regard
to which appear to be as follows:  Prior to May, the defendant
gave notice to the plaintiff that he intended to move.    On the
morning of that day nearly all of the furniture of the defendant
was removed from the premises, and the keys were delivered to
the janitress, who received and retained them.    At that time some
one of defendant's family told the janitress that they would come
back for a crib and piano, which were left in the premises, to
which she answered, "All right." The latter testified that, in simi-
lar cases, articles of furniture were usually allowed to remain until
they could be conveniently removed, to oblige tenants, and, if they
proved to be in the way, they were removed to her own apart-
ments or some other place.    In this case they were no inconvenience
to any one, as Fisher, the new tenant, did not move in.    It would
therefore seem to be clear that the defendant surrendered the prem-
ises to the agent of the plaintiff on May 1st, and that the articles
which remained in the rooms after that date were allowed to re-
main by the agent of the landlord, and that this was pursuant to a
custom recognized by the plaintiff and her agent in such cases.
We therefore think there was no holding over, and that the court
erred in allowing rent for a month, if that constituted any part
of the sum of $43 awarded to the plaintiff.    If, on the other hand,
all of this sum was allowed for damages to the freehold, we think
it was excessive.    The evidence of the plaintiff was that she ex-
pended $50 in repairing the apartments.    But the case seems to
have been tried by the plaintiff on the theory that any expenditure
she might have seen fit to make was chargeable to defendant.    The
proof was that the house had been built about five years, and had
been occupied by another tenant previous to the defendant, who
had used it up to May 1, 1892, when that tenant moved out.    There
were holes in the wall caused by nails having been driven in.    The
wall paper was somewhat defaced, and it was thought sufficient
to patch it by pasting pieces over the holes.    There is no claim
that new paper was put on defendant's premises when he took
them.    The only evidence on the part of the plaintiff as to the
condition of the flat in May, 1892, is that plaintiff's husband thought

it was in fairly good condition, and expended $10 or $12 in touch-
ing up the hardwood polish, and rubbing it down.    After the de-
fendant had occupied the apartments for another year with his
family, the repairs alleged to have been done by the plaintiff were
very complete.    The woodwork was all rubbed down, and holes
filled up with putty, to match the woodwork.    It was then varnished
and cleaned, and brought to a good finish.    New gold paper was
applied to two of the rooms, and the walls of the kitchen were
painted, and in other respects the apartments were made as nearly
new as possible, at an expense of $50, some portion of which was
certainly chargeable to the damage caused by the former tenant,
besides which some allowance ought to be made for the imperfect
condition of the premises after the repairs.    But the covenant in
the lease on the defendant's part was not to restore the premises to
any better condition than he found them, but was only that he
should repair and make good any damage occurring through any
neglect on his part.    The judgment, therefore, should be reversed,
and a new trial ordered, with costs to the appellant to abide the
event.    All concur.